**William BUTLER and Russell Smith**

v.

**James C. CRUMLISH, Jr., Howard Leary and William Lennox.**

**Civ. A. No. 35337.**

United States District Court
E. D. Pennsylvania.

May 19, 1964.

———◇———

Herman I. Pollock, Bernard L. Segal, Philadelphia, Pa., Vincent J. Ziccardi, of Defender Assn. of Philadelphia, Philadelphia, Pa., for plaintiffs.

Matthew W. Bullock, Jr., Deputy City Sol., for defendants.

Charles J. Bogdanoff, Asst. Dist. Atty., for defendant Crumlish.

FREEDMAN, District Judge.

Plaintiffs were arrested on a number of charges, including rape, and are in custody in the Philadelphia Detention Center for want of bail. The police have ordered them brought into a so-called "line-up" or "stand-up" [1] at the Detention Center [2] for possible identification by victims of similar crimes. Plaintiffs have brought this suit under the Civil Rights Acts (42 U.S.C. § 1983; 28 U.S.C. § 1343) to enjoin the police from placing them in a "line-up", on the claim of infringement of their constitutional rights.

The matter is before me on the plaintiffs' application for a preliminary injunction.

It is the necessity of assuring their appearance at trial which unfortunately requires criminal defendants, who are presumed to be innocent, to be confined in prison while awaiting trial. This hardship has been alleviated by the practice of permitting the release of prisoners who give assurance of their appearance by the entry of bail. "This traditional right to freedom before conviction", the Supreme Court of the United States has said, "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. * * * Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951).[3] The privilege of bail is recognized in both the Federal and Pennsylvania Constitutions, which specifically provide that "[e]xcessive bail shall not be required * * * ".[4] The Pennsylvania Constitution further specifies: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great * * * ".[5]

The differences that necessarily result from imprisonment while awaiting trial and freedom on bail cannot be made the foundation for any constitutional objection because of discrimination, for the distinction itself is constitutionally recognized. The prison authorities therefore may subject a criminal defendant who is imprisoned for want of bail to all those restraints which are an essential part of the management of a prison. Thus, pending trial, such a defendant may be imprisoned in a cell and must submit to the routine of the prison relating to his meals, his exercise and the many other activities of daily life. All these matters, however, are incidental elements in the organized caretaking of the general company of prisoners.

A new question is presented when those who have custody of a defendant awaiting trial seek to make him available for identification by victims of other crimes. Plaintiffs' counsel concede that the prison authorities could have a prisoner viewed while he is in his cell, just as a defendant who is free on bail may be observed as he enters or leaves his home or place of employment. The prison authorities obviously could arrange to have the prisoners observed as they exercise in the prison yard. A "line-up", however, is something of a different nature. The suspect is asked to speak and to walk about on a platform so that his voice and bearing as well as his appearance may be made known to the

1. One of the plaintiffs, Russell Smith, was "lined up" on March 10th, but the police seek to place him in another "line-up" because a number of the complainants failed to appear.

2. Until very recently the "line-up" room was in the Police Headquarters to which the prisoners were brought from the Detention Center. The change in procedure is of no legal significance.

3. See also, Bail: An Ancient Practice Reexamined, 70 Yale L.J. 966 (1961).

4. The Federal provision is contained in the Eighth Amendment. The Pennsylvania provision, in identical words, is contained in Article I, § 13, of the Constitution of 1874.

5. Article I, § 14.

complainants. He is required to appear with other suspects, although the police insist that this is done in order to minimize the risk of mistaken identification. He is subjected to the glare of bright lights which blind him from seeing the complainants, although they may see him.

All this goes beyond mere observation. It makes the prisoner not simply an object of custodial care by the prison authorities, but rather an active participant in police investigation, a role which a free man is not required to assume. The confinement of the unbailed defendant while awaiting trial is a necessary restraint on his liberty, but it confers no authority on the police to take him into their dominion to investigate other possible offenses. The police are not the managers of the prison, and the circumstance that a number of defendants are confined in one place adds nothing to their authority over them. The rights of unconvicted criminal defendants were reviewed almost half a century ago by the late Judge Finletter in Commonwealth v. Brines.[6] There the District Attorney of Philadelphia had applied for an order to bring a prisoner accused of murder from the county jail to the District Attorney's office so as to afford an opportunity for his identification on the very charge for which he was confined. Judge Finletter denied the application in words which bear repetition:

"By the terms of the commitment, he is to remain in the county prison to answer the charge of murder, not to answer the call of any and every person, official or other, who may wish to meet him or speak to him. * * *

"It seems to be forgotten that an accused is not a convict, and that it is only strong necessity that compels his detention *before* trial. It is a restraint of the liberty of his person which is unavoidable. It certainly should not be aggravated by the infliction of any unnecessary indignity.

"An accused, but unconvicted, prisoner is not to be bundled about the county at the beck and call of every policeman or prosecutor who may wish to see him. If he were at liberty, the District Attorney could no more 'send for' him to call at his office than he could 'send for' any other citizen, or than the latter could send for the District Attorney. His rights are not different because he is accused of a crime. He has not been convicted and he is presumed to be innocent."

The constitutional authority for the State to distinguish between criminal defendants by freeing those who supply bail pending trial and confining those who do not, furnishes no justification for any additional inequality of treatment beyond that which is inherent in the confinement itself. When a bailed defendant is suspected of another crime the police invite him to come to the police station. If he appears, a much more informal "line-up", the so-called "divisional line-up", is held. If he refuses to appear, the police can do nothing beyond intensifying their efforts to obtain sufficient evidence to constitute probable cause for his arrest on the new charge.[7] True the police assert that most such defendants voluntarily appear when asked to do so, out of an eagerness to remove the suspicion of guilt of another offense. But the comparison between those who are free on bail and those in prison for want of bail means nothing unless it is applied to those in each class who refuse to cooperate. The man who is at liberty may say no to the police; the man in prison for want of bail cannot.

The compulsory "line-up" of the unbailed defendant thus amounts to a material distinction between those who enter bail and those—equally presumed to be innocent—who do not. It is, moreover, unrelated to the purpose for which an unbailed defendant is confined—to insure his appearance at trial. Nor may a court disregard the practical effects of its judgment and ignore the common

---

6. 29 Pa.Dist. 1091 (1920).

7. Because of administrative inconvenience as well as problems of security and safe-ty, the police rarely give complainants an opportunity to observe a bailed suspect outside the police station.

knowledge that the system of bail, based as it is on financial ability, is weighted heavily against the poor. This is especially true in the great urban areas where populations are highly mobile and family roots do not reach deep. The friend or relative who formerly tendered the security of a freeholder has been largely supplanted by the professional bondsman. He must be paid a premium in all cases, and he often requires cash or similar security before agreeing to guarantee the appearance at trial of a defendant who is personally unknown to him. The theoretical equality of the right to bail when all are not financially equal thus has become in reality a deep and wounding social inequality, increasingly oppressive to the poor and the vagrant.[8] It brings to mind Anatole France's ironic epigram that the law in its majestic impartiality forbids the rich and poor alike to sleep under bridges.

It is clear, therefore, that there is substantial merit in the plaintiffs' claim that their involuntary "line-up" would constitute an invidious discrimination depriving them of the equal protection of the laws guaranteed by the Fourteenth Amendment. At this stage of the case a preliminary injunction should issue to preserve the status quo pending final hearing if otherwise the plaintiffs would suffer irreparable harm.

Irreparable harm is clearly threatened, for the police have made it plain that they will promptly place the plaintiffs in a "line-up", and the refusal of a preliminary injunction would render their case moot. I am not unmindful that a preliminary injunction would, for all practical purposes, put an end to police "line-ups" until the final decision in this case. For the testimony makes it abundantly clear that the "line-up" procedure cannot be conducted successfully on a voluntary basis; and this is confirmed by the insistence of the police that they will proceed with a "line-up" of these non-consenting plaintiffs. The supposed inconvenience to the police in the detection of crime does not, however, justify the denial of a substantially meritorious claim of constitutional right pending trial. Moreover, a preliminary injunction will still leave available to the police opportunities for observation of suspects by complainants which are broader than in the case of those who are free on bail.

The view I have taken of the equal protection claim under the Fourteenth Amendment makes it unnecessary to consider the plaintiffs' other constitutional claims.

A preliminary injunction therefore will be entered. Plaintiffs may submit a form of decree on notice to defendants.

8. See Sullivan, Proposed Rule 46 and The Right to Bail, 31 Geo.Wash.L.Rev. 919 (1963), and authorities and references therein; see also the expressions of Mr. Justice Douglas in Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (1960) and 82 S.Ct. 11, 7 L.Ed.2d 9 (1961), on the continued imprisonment of an indigent defendant for want of bail; and the concurring and dissenting opinions in Pannell v. United States, 320 F.2d 698, 699 (D.C.Cir.1963).