UNITED STATES of America
v.
Stephen Luther EVANS.

Cr. No. 21615.

United States District Court
E. D. Pennsylvania.

Feb. 11, 1965.

Drew J. T. O'Keefe, U. S. Atty., John R. Sutton, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Louis Lipschitz and Jerold G. Klevit, Philadephia, Pa., for defendant.

KRAFT, District Judge.

On October 31, 1963, shortly before 2 P.M., an armed man entered the office of the Almond Savings and Loan Association, Philadephia, an insured institution, and robbed it of $1,346 in currency.

Defendant was arrested two days later, and was subsequently charged with the offense in a 4-count indictment under 18 U.S.C. § 2113. Following his conviction by a jury on 3 counts, defendant filed the present motion for a new trial.

The defense was denial and an alibi. Defendant claimed that he was confined to his home with a cold during the entire day in question. The case against defendant thus turned on the issue of identification.

Mrs. Finch, an employe of the Association, was an important witness for the Government. She was positive in her identification of the defendant as the robber, and gave a lucid account of the occurrence: She was seated at a desk in the rear of the office when defendant, wearing a pair of sunglasses, entered the front door. At this time a customer left the office and she was alone with defendant. Defendant paused momentarily, looked about and advanced towards her. She became frightened, laid the telephone transmitter on the desk and pushed a button which caused it to buzz in a nearby office. Defendant threw down a paper bag and told her not to be "smart". She saw a gun in his hand. Defendant ordered her to return the telephone to its place. She picked up the paper bag and went behind the counter to the teller's station. Defendant stood in front of the counter and ordered "All the bills." She removed the currency from the cash drawer and put it into the bag. About this time, Mr. LaSota, the Association's treasurer, came into the office. Defendant took the bag and fled. Mrs. Finch estimated that defendant was in the office for "approximately three minutes."

Mrs. Finch identified defendant in a line-up three days after the robbery, and again at the magistrate's hearing the day following the line-up.

Mrs. Fair, another Government witness, positively identified defendant as the man she saw walking toward the Association at the time in question, as she was standing on the sidewalk in front of a luncheonette, about "six doors away." She noted him particularly, she said, because "it was drizzling rain and he was wearing sunglasses and it seems odd to see somebody with sunglasses when it rains." She testified that she again saw defendant as she was emerging from the luncheonette a few minutes later, and that he was running "in the opposite direction."

Mrs. Fair first identified defendant early in November, when she picked him out of a group of nine or ten men at a police station.

Defendant now contends that the trial judge erred in failing to caution the jury as to the unreliability of identification testimony, and in refusing certain of defendant's points with respect thereto.

The charge relating to identification testimony was based substantially on the holding in Commonwealth v. Kloiber, 378 Pa. 412, at p. 424, 106 A.2d 820, at p. 826 (1954).

"Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that '"his [positive] testimony as to identity may be treated as the statement of a fact"'. Commonwealth v. Ricci, 161 Pa.Super. 193, 195,

54 A.2d 51, 52, Commonwealth v. Sharpe, 138 Pa.Super. 156, 159, 10 A.2d 120.

\* \* \* \* \* \*

"On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."

■ Defendant urges that Mrs. Fair's opportunity "for positive identification" was not good, and that Mrs. Finch's testimony fails to meet "all four of the required criteria announced in Kloiber," and that therefore he was entitled to a cautionary instruction in the charge. Defendant relies strongly on Commonwealth v. Wilkerson, 204 Pa.Super. 213, 203 A.2d 235 (1964).

We disagree completely with defendant's position. We believed at trial, and still believe, that the testimony of the two witnesses amply meets all of the criteria laid down in the first paragraph of Kloiber, as dispensing with the need for cautionary instruction. The question whether the identification testimony should be received with caution was clearly for the jury, and we so charged:

"Whether or not you do receive it under those circumstances with caution is entirely for you under all the circumstances and the evidence, as is the degree of caution, if any, which you employ."

Wilkerson, supra, is inapposite. In that case, the identification testimony very clearly failed to meet two of the Kloiber criteria, and, accordingly, the Superior Court held that the trial judge should have warned the jury that such testimony must be received with caution.

■ Certainly we cannot say as a matter of law that Mrs. Fair's opportunity for positive identification was not good. Defendant, when first observed by her, walked directly in front of her on the sidewalk shortly after high noon. It may be noted, too, that defendant's light skin and regularity of features were not usual in a Negro. Her attention was particularly attracted, as already stated, by the incongruity of sunglasses worn in a drizzling rain. Mrs. Finch had three minutes to observe defendant's appearance, characteristics, manner and bearing under circumstances likely to impress her. Both witnesses were positive in their identification of defendant at trial, and their identification, even after cross-examination, remained positive and unqualified. Defendant can point to no occasion before trial when either witness failed to identify defendant in personal confrontation. Defendant lays great stress on the fact that Mrs. Finch, from hundreds of photographs shown her, picked out not only the defendant's picture, but also "picked out another man's photograph" as resembling the robber. We do not regard this as a "prior failure to identify."

We hold, therefore, that defendant's complaint on this ground is without merit.

■ Defendant's next complaint is that the trial judge erred in admitting evidence obtained as the result of an "unlawful lineup."

The robbery here involved occurred on Thursday, October 31, 1963. Defendant was arrested the following Saturday evening. He was scheduled for hearing on an entirely unrelated charge the next morning (Sunday). Contrary to counsel's statement that defendant "was given a hearing" on the other charge, there was no hearing then. The scheduled hearing was continued. On that same Sunday afternoon, Mrs. Finch identified defendant in a line-up as the man who had robbed the Association. At the time of this identification, defendant had had no hearing either on the other or the instant charge.

Mrs. Finch, over defendant's objection, was permitted to testify to her

identification of defendant in the line-up. Defendant claims that placing him in a line-up for identification, in the circumstances described, was "improper police procedure, the fruits of which should have been excluded at trial." Those fruits, he asserts, "are Mrs. Finch's testimony concerning the line-up as well as subsequent identifications by Mrs. Finch, where she identified the same man she saw in the line-up." Sole reliance is placed upon Butler v. Crumlish, 229 F.Supp. 565 (E.D.Pa.1964), in which Judge Freedman enjoined the placing of a suspect in a lineup while in involuntary custody for want of bail, on the ground that such procedure violated the constitutional rights of the accused.

Defendant's contention here lacks merit. Butler is wholly inapposite. There, the accused were in custody "for want of bail." The heart of Judge Freedman's ruling is as follows (pp. 567, 568):

> "The compulsory 'line-up' of the unbailed defendant thus amounts to a material distinction between those who enter bail and those—equally presumed to be innocent—who do not. It is, moreover, unrelated to the purpose for which an unbailed defendant is confined—to insure his appearance at trial. * * *

> "It is clear, therefore, that there is substantial merit in the plaintiffs' claim that their involuntary 'line-up' would constitute an invidious discrimination depriving them of the equal protection of the laws guaranteed by the Fourteenth Amendment."

Defendant, here, was placed in a line-up while in custody awaiting hearings on two separate charges. Bail had not been fixed. Defendant was not subjected to invidious discrimination as between those at large on bail and those held in custody for want of bail. So far as the evidence discloses, he was accorded the same treatment as all others in similar circumstances. Judge Freed-man did not hold that the placing of a suspect in a line-up, or otherwise making him available for identification, was per se a violation of constitutional rights; and we know of no authority, so holding. On the other hand, as recently as in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Supreme Court expressly recognized the power of the police to investigate an unsolved crime by gathering information from witnesses and by other proper investigative efforts.

■ Defendant next asserts that the trial judge erred in sustaining the Government's objections to the following questions directed to Mrs. Fair on cross-examination:

> "Q Did you ever approach anyone and say to them, 'Hello, Joe,' or 'Hello, Mary,' or whatever name you used and found out that it was not the person that you thought it was?"

> \* \* \* \* \* \*

> "Q You said that you had a conversation with a representative of the FBI and you gave him a statement?

> "A Yes.

> "Q Now, will you describe that man to us."

We think the ruling was correct. Defendant was, of course, entitled to cross-examine the witness to test her credibility, her powers of observation and the accuracy of her recollection. However, the questions propounded involved identification of other persons, under vastly different circumstances and conditions than those prevailing in the instant case. Moreover, if the witness had answered the first question in the affirmative, she should have been permitted to detail the facts and circumstances attending the mistaken identification. The cross-examination could thus have branched out into numerous collateral matters, serving only to confuse the jury and distract their attention from the real issues in the case. As

stated in United States v. Augustine, 189 F.2d 587, 590 (3rd Cir.1951):

"The credibility of a witness is of course a proper subject of cross-examination. But there are limits to the extent of the excursions to be allowed on such a voyage of discovery and a trial judge must have considerable discretion in setting them."

We think the ruling was well within the bounds of judicial discretion.

■ The court's refusal to charge as requested in defendant's sixth point is next assigned as error:

"6. If the jury find that any circumstance relied upon which may be incriminating is equally susceptible of two interpretations, each of which appears to be reasonable and one of which points to the defendant's guilt and the other to his innocence, it is your duty to accept that of innocence and reject that which points of (sic) guilt."

The point was properly refused. We think it neither reasonable nor proper for the jury to isolate each circumstance appearing in evidence and to evaluate it in complete detachment from all others. A particular circumstance may, and often does, take on color, character and significance from other circumstances. We think the evidence must be considered and weighed in context and as a whole. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

The authorities relied on do not support defendant's contention, but sustain our view. In Commonwealth v. McSorley, 189 Pa.Super. 223, 150 A.2d 570 (1959), a prosecution for malfeasance, etc., in office, the controlling issue was defendant's motive. Quoting from Commonwealth v. Woong Knee New, 354 Pa. 188, 221, 47 A.2d 450, the Court stated (189 Pa.Super. p. 233, 150 A.2d p. 575):

"[W]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses will result in depriving a defendant of his life or his liberty. When a party on whom rests the burden of proof in either a criminal or a civil case offers evidence consistent with two opposing propositions, he proves neither."

The Manual on Uniform Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 567 states:

"If two conclusions can reasonably be drawn from the evidence, one of innocence, and one of guilt, the jury should adopt the one of innocence."

It follows that defendant's sixth point did not correctly apply the law and was properly refused. Moreover, circumstantial evidence played but little part in the proofs in the instant case. The vital evidence was the direct testimony of Mrs. Finch and Mrs. Fair.

■ Defendant complains, too, that on redirect examination the Government's attorney was permitted, over objection, to interrogate Mrs. Finch concerning her testimony against defendant at a preliminary hearing.

In the course of a searching cross-examination, Mrs. Finch was questioned regarding her testimony at the preliminary hearing with respect to photographs shown her and her identification of defendant from these photographs. Parts of that testimony were read to her, and she indicated she had so testified. On redirect examination, the Government also questioned the witness on her testimony at the preliminary hearing. The Government's interrogation, in the main, dealt with the general matter of identification, including identification from photographs. In a few instances where it did not, the trial judge sustained defendant's objections. While some of the redirect examination may seem repetitious of the prior cross-examination, some repetition was inevitable because of the necessity to preserve continuity

in the witness' testimony at the earlier hearing, and to place it in proper context.

▇ After careful review, we are persuaded that the testimony was properly admitted under the general rule in such cases. See 98 C.J.S. Witnesses § 422, p. 229:

"Where a witness has been cross-examined as to a part of a conversation, statement, transaction, or occurrence, the whole thereof, to the extent that it relates to the same subject matter and concerns the specific matter opened up, may be elicited on redirect examination."

See, to the same general effect, Cafasso v. Pennsylvania R. Co., 169 F.2d 451, 453 (3rd Cir.1948).

▇ Defendant, finally, alleges error in the refusal of his fifth point for charge:

"5. The state of mind described by the phrase 'reasonable doubt' is one of indecision or hesitation to reach the conclusion of guilt, and necessarily implies that the juror may be unable to give 'some proper reason for entertaining it'; reasonable doubt may exist without his being able to formulate any reason for it. It is sufficient if the conscientious mind of reasonable firmness and judgment is unable to from the evidence find the facts involving guilt. A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge."

The point was properly refused. The first two sentences of the point were taken bodily from the opinion in Commonwealth v. Baker, 93 Pa.Super. 360, 362 (1928). The Court held, not that the trial judge should have so charged, but that it was error to instruct the jury that a reasonable doubt "must be the kind of doubt that an intelligent man or woman can give some reason for entertaining."

More importantly, however, the first sentence, by the vast preponderance of authority, is not an accurate statement of the law. On its face, a reasonable doubt without reason to support it seems a contradiction in terms. In Bernstein v. United States, 234 F.2d 475 (5th Cir. 1956), the approved instruction on reasonable doubt emphasized that it was not a "speculative doubt" but a doubt "for which a reasonable man can give a reason." In Freeman v. United States, 158 F.2d 891 (9th Cir.1946), the Court stated that a reasonable doubt "must be a doubt based on reason." In the Manual on Uniform Jury Instructions, supra, 33 F.R.D. 523, 567, we find the following:

"A reasonable doubt means a doubt that is based on reason and must be substantial rather than speculative. It must be sufficient to cause a reasonably prudent person to hesitate to act in the more important affairs of his life."

It is sufficient that in the instant case the charge on reasonable doubt followed substantially that given in Commonwealth v. Drum, 58 Pa. 9, 22 (1868). See Commonwealth v. Baker, supra, 98 Pa.Super. 360, 362.

The proposed point was also properly refused because of the inclusion therein of the phrase "moral certainty". Commonwealth v. Kloiber, supra, 378 Pa. 412, 427, 106 A.2d 820, 828:

"We are of the opinion that the use of the words 'moral certainty' serves to confuse and befog the jury instead of enlightening and aiding them in determining whether the Commonwealth has convinced them of the guilt of the defendant beyond a reasonable doubt, and that in the future it would be wiser if the charge did not contain any reference to 'moral certainty'."

Careful review and consideration of the entire record persuades us that defendant received a fair trial, and that his complaints are without merit.

## ORDER

Now, February 11th, 1965, it is ordered that:

1. Defendant's motion for a new trial be, and it is, denied.

2. Defendant is ordered to appear for sentence on February 19th, 1965, at 10 A.M.