Roosevelt MORRIS

v.

James C. CRUMLISH, Jr., Howard Leary, William Lennox and Edward J. Hendrick.*

Civ. A. No. 37331.

United States District Court
E. D. Pennsylvania.

March 24, 1965.

William F. Hall, Jr., Philadelphia, Pa., for plaintiff.

Theodore Lunine, Asst. City Sol., Philadelphia, Pa., for defendants.

LUONGO, District Judge.

This is a suit under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983. The jurisdiction of this court is founded on 28 U.S.C.A. § 1343. Since injunctive relief alone is sought, by agreement of the parties the matter will be disposed of as on final hearing for permanent injunction and not as for preliminary injunction.

FACTS

Roosevelt Morris is confined in the Philadelphia Detention Center awaiting

---

* The defendants are, respectively, the District Attorney, the Police Commissioner and the Sheriff of Philadelphia, and the Superintendent of the Philadelphia Detention Center. The last named was added as a defendant by Order dated February 18, 1965.

trial on numerous charges of burglary and related offenses. He is there because he was unable, due to his indigency, to post bail which was set at $10,000. Defendants have informed Morris that they intend to place him in a "lineup" at the Center for possible identification by the victim of a rape and a burglary unrelated to the charges on which he is now being held. The injunction which Morris seeks is to prevent the defendants from placing him in the lineup.[1]

The lineup, as practiced by the defendants, is conducted in a specially designated room in the Admissions Building at the Philadelphia Detention Center. The Admissions Building is the first one encountered upon entrance to the Center and is connected by passages to the buildings containing cell blocks and dormitories where the inmates are housed. In the Admissions Building are also located administrative offices, infirmary, medical and dental offices, visiting room and facilities for interviewing and classifying inmates upon their arrival at the institution.

The lineup room is divided into two parts by a glass partition. Inmates remain in the custody and control of the institution's guards on one side of the glass partition, while police and victims of crimes under investigation are on the other side. On the inmates' side is a platform on which they are made to stand and, upon order, to present front, side and rear views of themselves to the viewers. Lights are trained on the platform to make those on view more visible to the viewers and the viewers less visible to them. There is a system of communication between the two sections by which requests are transmitted by the police to the guards and by which the voices of the inmate-suspects, responding to questions as to name and age, are heard by the viewers.

Lineups are held at the Detention Center only on Thursday evenings. The police notify the Superintendent of the Center in advance which of the inmates they desire to have placed in a lineup on a specified Thursday evening. The inmate and his counsel are notified and counsel is given the opportunity to be present. As many as four or five lineups are conducted in an evening. Victims of several crimes may be present while an inmate suspected of a particular crime is on view.

It is not feasible to have inmates subjected to the view of victims in cell blocks, dormitories or other general population areas because of the danger of harm to the viewers and the threat to the security of the institution.

Not all persons awaiting trial are placed in lineups nor is the lineup used in the investigation of all crimes. The lineup is used in the investigation of not more than 15% to 20% of major felonies and is seldom used in investigation of lesser crimes. Requests to place persons in lineups are not made indiscriminately, they are made only when the police, on the basis of information already in their possession, have reason to believe that an inmate may have been involved in the commission of a major crime under investigation. The information may consist of one or more of several items such as:

(a) Similarity of *modus operandi* described by the victim with that known to have been used by an inmate in the commission of other crimes for which he is charged or has been convicted in the past;

(b) Possession by an inmate at the time of his apprehension of articles said to have been taken from the victim of another crime;[2]

(c) Geographical area of operations;

(d) Physical description.

1. Upon the filing of the complaint a temporary restraining order was requested but none issued because of the assurance given by the defendants that they would voluntarily withhold action while the matter was under consideration by the court.

2. In Morris' case (a) and (b) were used. They seek to place him in a lineup for identification as the perpetrator of a rape and burglary. The method by which the burglary was committed was similar to that allegedly used by Morris in the com-

## DISCUSSION

The Civil Rights Act of 1871, 42 U.S.C.A. § 1983, provides:

"§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The gravamen of plaintiff's charge under the Civil Rights Act is deprivation of rights and privileges secured by the Constitution of the United States.

1. *Denial of Equal Protection of the Laws.*

Plaintiff's complaint of violation of constitutional rights is pitched primarily to denial of the equal protection of the laws guaranteed by the Fourteenth Amendment. His position is that he is in custody only because he is too poor to pay for bail and, in consequence, he is subject to being placed in a lineup while those who are free on bail are not, and since this difference in treatment is based on his indigency, it constitutes invidious discrimination. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

■■■ Unquestionably there is a difference in the treatment of those free on bail and those in custody in default of it. The difference is a form of discrimination, but the Constitution only prohibits unequal treatment based on unreasonable classification, i. e. invidious

discrimination. As stated in Douglas v. People of State of California, 372 U.S. 353, 356–357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963),

"* * * it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' * * * Absolute equality is not required; lines can be and are drawn and we often sustain them. * * *."

The equal protection of the laws which the Constitution guarantees is that the laws apply equally to all those within appropriate classifications. There is no valid basis for comparing the status of freedom with that of confinement. The one is the antithesis of the other. Confinement carries with it a suspension of or a restriction upon the exercise of most of the rights of free men, not the least of which is liberty itself. Other rights which are denied those who are confined are the right of privacy, to earn a livelihood, to vote, to speak freely, to associate with persons of one's choosing, and many others equally obvious. If the classification of jail versus bail is a constitutionally permissible one, those in the one category are not entitled to the equal protection of the laws with those in the other. The classification is not only constitutionally permissible, it is expressly provided and guaranteed by the Eighth Amendment to the Federal Constitution [3] and, in like terms, by Article I, Section 13 of the Constitution of Pennsylvania, P.S. Since it is constitutionally sanctioned, the classification cannot be made the basis for a charge of discrimination. Butler v. Crumlish, 229 F. Supp. 565 (E.D.Pa.1964).

Not only has plaintiff failed to establish that he has a constitutional right to

mission of the crimes for which he is awaiting trial. In addition, when he was apprehended he had in his possession an electrical appliance of a particular brand name and a necklace, both described by the victim as having been taken during

the commission of the crimes of which she complained.

3. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.Const. Amend. VIII.

the same treamtent as one who is free on bail, it is by no means true that one who is free on bail has a constitutional right to be protected from possible identification by the victim of a crime for which he has not been formally charged. Indeed it is clear that persons free on bail may be viewed by victims. That they are not subjected to view as frequently as are those in custody is attributable to lack of police manpower, inconvenience and danger of harm to viewers, not to a constitutional right to be free from it. The major difference, in that regard, between those free on bail and those in custody is that the latter, by reason of the fact that they are in custody are more conveniently available, under conditions affording greater security for viewers, than those who are at liberty.

Since Morris, a person in custody, is not entitled to the same freedom as are those who are at liberty, and since he cannot show that he is treated differently than those who, like himself, are in custody in default of bail, his claim of denial of equal protection of the laws must fail.

### 2. *Self-incrimination.*

Another argument advanced by plaintiff is that the lineup procedure violates his constitutional rights in that it compels him to be an unwilling " * * * active participant in police investigation * * * "[4] He concedes that he may, without violation of his constitutional rights, be looked at and observed by the victim of some other crime while he is in his cell or in some other part of the institution. But he contends that the procedure used here requires him to be an "active participant" in that he is compelled to travel several hundred feet from his cell to the lineup room and is there made to move about and to speak so that his movements and his voice are likewise used as aids in identification. This contention may be viewed as a possible violation of two constitutional provisions, the privilege against self-incrimination as contained in the Fifth Amendment or of due process of law as contained in the Fourteenth Amendment.

■■ It is clear that the privilege against self-incrimination does not prohibit the use of a defendant's body as evidence during a trial when it may be material, as for purposes of identification. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Nor does it prevent the viewing in a police lineup of a suspect under arrest since such bodily view does not require the accused to be an unwilling witness against himself. Caldwell v. United States, 338 F.2d 385 (8th Cir. 1964), citing 8 Wigmore, Evidence § 2265 (McNaughton rev. 1961). The only difference between Caldwell and the instant case is that in Caldwell the lineup was in connection with the very charge for which the accused was under arrest, whereas here Morris was in lawful custody on charges other than the ones for which they seek to place him in the lineup. This is not a sufficient distinction to afford Morris a basis for relying on the self-incrimination ground which was rejected in Caldwell. Morris, in fact, has not placed great reliance on the self-incrimination claim but he has used the "other charges" claim as the basis for his due process contention.

### 3. *Due Process.*

Briefly stated, plaintiff's due process argument is that if he were a free man it would be a violation of due process of law if the police, without probable cause to arrest him, were to take him into custody against his will for the purpose of placing him in a lineup. See Draper v. United States, 358 U.S. 307, 79 S.Ct.

---

4. In this argument plaintiff relies on and quotes from Butler v. Crumlish, supra, p. 567. The ruling of my esteemed former colleague, now Circuit Judge Freedman, was on preliminary injunction and was specifically stated to be " * * * to preserve the status quo pending final hearing * * * " and is, therefore, distinguishable. To the extent, however, that the ruling there may have represented Judge Freedman's ultimate view on the merits, I reluctantly and respectfully disagree.

329, 3 L.Ed.2d 327 (1959). Morris argues that although he is in custody he is nevertheless a free man with regard to the crimes for which he has not yet been charged. When, therefore, the police require him to move from his cell to the Admissions Building where the lineup is to be conducted he will, in effect, have been taken into custody, i. e. "arrested" without probable cause and such "arrest" violates due process.

■ The fallacy in that argument is that Morris, being already in lawful custody, is not free. His movements are already subject to the control, for all proper institutional purposes, of those to whose custody he has been committed until trial. He has not the freedom of action which an arrest, i. e. a taking into custody, is designed to restrict. However free in spirit Morris may be with regard to the charges on which he has not been held, he is not free in body. Since arrest and custody are matters affecting the body, and since he is already in custody, requiring him to move about within the place of confinement cannot constitute an "arrest."

■ There is yet another reason compelling the same conclusion. The due process argument has as a necessary ingredient compulsory movement from one place to another within the institution. Concededly there would be no due process argument if the viewing were held wherever Morris happened to be at the time. The Superintendent of the Center has determined, as a matter of good prison administration, that it is unsafe to escort outsiders through the institution. To better insure the safety of the visitors and to preserve security and order within the institution, he has set aside a room wherein to conduct such activity. That is a matter involving the exercise of judgment in the administration of a state institution and since, as pointed out above, the procedure used violates no basic constitutional right,[5] it is not the province of this court, under the guise of Civil Rights, to inquire into a matter of administration and to determine whether the procedure adopted best serves the interests of good prison administration. Gurczynski v. Yeager, 339 F.2d 884 (3d Cir. 1964); United States ex rel. Wagner v. Ragen, 213 F.2d 294 (7th Cir. 1954), appeal dismissed, Wagner v. Stratton, 350 U.S. 926, 76 S.Ct. 320, 100 L.Ed. 810 (1956); United States ex rel. Morris v. Radio Station WENR, 209 F.2d 105 (7th Cir. 1953); Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961), cert. denied, 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961).

In this proceeding Morris has chosen to attack the consequences of his confinement rather than the confinement itself. He has conceded that his confinement for default of bail is lawful. By that concession Morris has given up whatever claim he might have had to a charge of discrimination based on his poverty, for the root cause of his complaint really is that, because of his indigency, he has been denied liberty on bail pending trial.

## CONCLUSION

This court has jurisdiction of the parties and of the subject matter of the complaint under the Civil Rights Act of 1871 (Baker v. Carr, 369 U.S. 186, 198–204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)) but plaintiff has not established that defendants have denied or will deny him the equal protection of the laws, or due process of law, or that defendants have violated or will violate any right guaranteed him by the Constitution and laws. Plaintiff is, therefore, not entitled to injunctive relief and his request for a permanent injunction enjoining the defendants from placing him in a lineup at the Philadelphia Detention Center will be de-

---

5. For examples of violations of constitutional rights justifying interference with prison administration see Pierce v. La Vallee, 293 F.2d 233 (2d Cir. 1961) (freedom of religion); Stiltner v. Rhay, 322 F.2d 314 (9th Cir. 1963), cert. denied, Stiltner v. Washington, 376 U.S. 920, 84 S.Ct. 678, 1 L.Ed.2d 615 (1964) (right of access to courts); Redding v. Pate, 220 F.Supp. 124 (N.D.Ill.1963) (cruel and unusual punishment).

nied. Defendants are entitled to the entry of judgment in their favor.

Defendants will be relieved of their voluntary undertaking not to proceed against plaintiff pending the outcome of these proceedings, but upon application by plaintiff, a temporary stay will be granted pending the filing of an appeal should plaintiff desire so to do. Leave will be granted to plaintiff to proceed in forma pauperis for the purpose of filing the appeal, after which any further stay of proceedings or leave to proceed in forma pauperis must be sought from the Court of Appeals.

## ORDER

And now, this 24th day of March, 1965, it is ordered that the motion of defendants to dismiss the within complaint be and it is hereby denied; and it is further ordered that judgment be entered in favor of the defendants.