355 F.2d 710
 Oliver H. RIGNEY, Edward Moore, Clifton Sturdivant and James Moore
v.
Edward J. HENDRICK, Supt., et al. Edward MOORE, Appellant.
Oliver H. RIGNEY, Edward Moore, Clifton Sturdivant and James Moore
v.
Edward J. HENDRICK, Supt., et al. Clifton Sturdivant, Appellant.
Oliver H. RIGNEY, Edward Moore, Clifton Sturdivant and James Moore
v.
Edward J. HENDRICK, Supt., et al. James Moore, Appellant.
Oliver H. RIGNEY, Edward Moore, Clifton Sturdivant and James Moore
v.
Edward J. HENDRICK, Supt., et al. Oliver H. Rigney, Appellant.
Roosevelt MORRIS, Appellant.
v.
James C. CRUMLISH, Jr., et al.
George Higgins JOHNSON a/k/a Leonard George Hamilton, Appellant,
v.
Edward J. HENDRICK, Supt., et al.
 Nos. 15349, 15350, 15357-15359, 15384.
 United States Court of Appeals Third Circuit.
 Argued June 15, 1965.
Decided Oct. 15, 1965, Rehearing Denied Dec. 9, 1965.
 
 Herman I. Pollock, Philadelphia, Pa., for appellants in Nos. 15349, 15350, 15357, 15358, 15384.
 William F. Hall, Jr., Philadelphia, Pa., for appellant in No. 15359.
 Thedore H. Lunine, Philadelphia, Pa., for appellees.
 Before McLAUGHLIN, STALEY and GANEY, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 These actions were brought in the district court under the Civil Rights Act of 1871, 42 U.S.C. 1983, to enjoin the defendants, Philadelphia law enforcement, police and prison officials from compelling the appellants to participate in a form of police investigative proceeding known as a lineup.[1] The district court denied the relief sought, holding that the appellants failed to establish that they were or will be denied any right guaranteed by the Constitution. The appeals were consolidated for disposition here.
 
 
 2
 The essential facts are substantially the same in all of the cases. The facts in No. 15359 are typical. There, the appellant Roosevelt Morris had been indicted and was awaiting trial for burglary and other related offenses. He was confined in the Philadelphia Detention Center because, as the trial court found, he was unable to post bail due to his indigency. After Morris had been indicted, the victim of a burglary and rape, crimes not included in the indictment, identified some of her belongings discovered in Morris' possession when he was apprehended. This fact, coupled with the similarity between Morris' modus operandi and the method used against this victim led the police to request that Morris be viewed by the victim for the purpose of identification. In each of the other cases the police also sought to have victims of crimes view the appellants to either substantiate or negate evidence which caused the police to suspect that the appellants were guilty of further crimes.
 
 
 3
 The contentions of appellants are briefly these. They maintain that to compel them to appear in a lineup to be viewed by victims of crimes not included in their indictments without first being properly arrested for such crimes constitutes a denial of due process. They further argue that they are denied equal protection of the law because other persons also under indictment, but who are free on bail, may not be compelled to participate in a lineup. Appellants contend that this constitutes invidious discrimination because it is based on a condition of wealth. We are asked to reverse the district court's denial of the injunctions on either or both of these grounds.
 
 
 4
 We will first consider whether appellants will be denied due process. They contend that their incarceration is solely for the purpose of binding them over for trial on the charges for which they have been indicted. They maintain that compelling them to leave their cells and to participate in a lineup,[2] involving crimes other than those for which they have been indicted, cannot be done absent a valid arrest for those additional crimes. They further assert that their compulsory removal and participation would constitute an arrest without probable cause. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). These contentions stand or fall on whether an arrest must be made in every case before a suspect, not yet accused of the crime, can be placed in a lineup for the purpose of identification.
 
 
 5
 The right of the police to investigate unsolved crimes cannot be denied. Spano v. People of State of New York, 360 U.S. 315, 327, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (concurring opinion), as cited in Escobedo v. State of Illinois, 378 U.S. 478, 492, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The scope of investigative measures used by the police necessarily includes identification of the suspected perpetrator by the victim or witnesses. In most cases this is the most positive method of solution. Indeed, the appellants readily concede that the use of a lineup is not illegal per se and can be a proper police practice. The lineup, however, is not the only means of identifying a suspect; an individual not in custody may be placed under surveillance-- he may be viewed on the streets, entering or leaving his home or place of business, at places of amusement, or at any other place where he is not entitled to privacy. In addition, the police, a victim or witness to a crime may also view a suspect in custody in either his cell or the prison yard. See Butler v. Crumlish, 229 F.Supp. 565, 566, 568, terminated and permanent injunction denied, 237 F.Supp. 58 (E.D.Pa.1964). It is clear that a suspect need not be under arrest to be observed. There is no law or decision which says that a man, free or incarcerated, has a constitutional right not to be observed and possibly identified as the perpetrator of a crime even though no formal charges have been made.
 
 
 6
 Appellants do not deny that they may be viewed while participating in their normal prison routine; however, they assert that they may not be compelled to present themselves for observation. In denying the injunction, Judge Luongo found that 'it is not feasible to have inmates subjected to the view of victims in cell blocks, dormitories or other general population areas because of the danger of harm to the viewers and the threat to he security of the institution.' Morris v. Crumlish, 239 F.Supp. 498, 499. In view of this finding, the appellants' assertion, practically speaking, is that they may not be viewed at all. Thus, the police official, charged with the responsibility of solving crimes and apprehending the perpetrators, would be deprived of his most positive method of crime soluation-- identification of the suspect.
 
 
 7
 It has been said that the line between proper police procedures and those offensive to due process is difficult to draw. Haynes v. Washington, 373 U.S. 503, 515, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). But where there are competing concerns, the line to be drawn must be guided by the rules of fundamental fairness. Cicenia v. La Gay, 357 U.S. 504, 509, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). The determination of such rules 'necessarily depends upon all the circumstances of the case.' Crooker v. State of California, 357 U.S. 433, 439-440, 78 S.Ct. 1287, 1292, 2 L.Ed.2d 1448 (1958); Escobedo v. State of Illinois, 378 U.S. at 491, 84 S.Ct. 1758.
 
 
 8
 Lineups are held generally on Thursday evenings at the Detention Center. Both the suspect and his attorney are notified that he is to be placed in a lineup; the attorney is also given the opportunity to be present. The suspect remains in the custody of the prison guards on one side of a glass partition which divides the room into two parts; the victims and witnesses of crimes stand on the other side of the room. Such procedure makes the suspects available for identification, while maintaining security and protecting the victims and witnesses. No other solutions are apparent. We think that the use of the lineup, as found by the district court in these cases, is a reasonable solution to a practical problem and that it is in accord with the rules of fundamental fairness.
 
 
 9
 The contention made by the appellants that there first must be an arrest before they are taken from their cells to be placed in a lineup has no merit, for the sole physical attribute of an arrest is the taking into custody. Here, it would be anomalous to require an arrest, for the appellants are already in custody. Compare Barrett v. United States, 270 F.2d 772, 775-776 (C.A.8, 1959); United States ex rel. Bogish v. Tees, 211 F.2d 69, 72 (C.A.3, 1954). It is clear that the Constitution does not always require that the interests of the police in quickly and efficiently solving crimes yield to every assertion of a violation of due process. Cicenia v. La Gay, supra, 357 U.S. at 509, 78 S.Ct. 1297; United States ex rel. Hart v. Maroney, 230 F.Supp. 468, 476 (W.D.Pa., 1964).
 
 
 10
 This case is unlike Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, where police conduct was also alleged as offensive to due process. There the Court, in deciding that question, was quick to point out the lack of necessity of the particular conduct involved despite the contention that the tactic was necessary in the interests of justice. We find that the lineup procedure as employed by the Philadelphia police and prison authorities is a reasonable procedure necessitated by the particular circumstances here, and is not violative of due process. Escobedo v. State of Illinois, 378 U.S. at 491, 84 S.Ct. 1758.
 
 
 11
 We must next consider whether the use of the lineup procedure, as appellants contend, makes them active participants in a police investigation. Appellants do not detail their objections on this score; aside from its equal protection implications which we will subsequently discuss, we believe this argument has self-incrimination overtones. See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). However, we find no merit in such a contention. The privilege against self-incrimination was analyzed by the Supreme Court in a classic opinion by Mr. Justice Holmes, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), where it was said:
 
 
 12
 '* * * The prohibition of compelling a man * * * to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.' Holt v. United States, supra at 252-253, 31 S.Ct. at 6.
 
 
 13
 Dean Wigmore discussed the method of identification as being in violation of the privilege against self-incrimination as follows:
 
 
 14
 '* * * If, in other words, it (the constitutional inhibition) created inviolability not only for his physical control of his own vocal utterances, but also for his physical control in whatever form exercised, then it would be possible for a guilty person to shut himself up in his house with all the tools and indicia of his crime, and defy the authority of the law to employ in evidence anything that might be obtained by forcibly overthrowing his possession and compelling the surrender of the evidential articles,-- a clear 'reductio ad absurdum." 8 Wigmore, Evidence 2263 at 363 (3d ed. 1940).
 
 
 15
 'Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one.' 8 Wigmore, Evidence 2265 at 375 (3d ed. 1940). See also annot., 18 A.L.R.2d 796 (1951); annot., 16 A.L.R.2d 1322 (1951); annot., 70 A.L.R.2d 995 (1960). This view was recently applied by the Eighth Circuit in a lineup case, Caldwell v. United States, 338 F.2d 385, 388-389 (C.A.8, 1964).
 
 
 16
 The facts found by the district court, relevant to this argument, are set forth in note 2, supra. They reveal nothing that persuades us that the lineup procedure is a violation of the privilege against self-incrimination. It is clear from the holding in Holt that the viewing of a suspect for purposes of identification is not a violation of the privilege as asserted by appellants. The district court found that, in addition to viewing the appellants, the police would ask them to state their names and ages so that their voices might be identified. The requirement that a suspect speak in answer to certain innocuous questions, propounded by the police for the sole purpose of identification of his voice, is not the type of 'communications' that falls within the prohibitions established in Holt.
 
 
 17
 The final contention of appellants is that they would be denied equal protection of the law if compelled to participate in a lineup because those free on bail cannot be compelled to participate without first being arrested and charged with the specific crimes for which they will be viewed. The Constitution prohibits unequal treatment based upon an unreasonable classification. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The Supreme Court there stated:
 
 
 18
 '* * * (A) State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' Williamson v. Lee Optical (Co.) of Oklahoma, 348 U.S. 483, 489 (75 S.Ct. 461, 99 L.Ed. 563); Griffin v. (People of State of) Illinois, supra, (351 U.S. 12) p. 18 (76 S.Ct. 585, 100 L.Ed. 891). Absolute equality is not required; lines can be and are drawn and we often sustain them. See Tigner v. (State of) Texas, 301 U.S. 141 (60 S.Ct. 879, 84 L.Ed. 1124); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163.' Supra at 356-357, 83 S.Ct. at 816. '* * * (The equal protection clause) forbids all invidious discrimination but does not require identical treatment for all persons without recognition of differences in relevant circumstances.' The Constitution of the United States of America: Analysis and Interpretations at 1283 (1964 ed.). '* * * The due process and equal protection clauses overlap but the spheres of protection they offer are not coterminous. The due process clause 'tends to secure equality of law in the sense that it makes a required minimum of protection for everyone's right of life, liberty, and property, which he Congress or the legislature may not withhold. * * * The guaranty (of equal protection) was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other." Constitution: Analysis, supra at 1283-1284, quoting from Truax v. Corrigan, 257 U.S. 312, 332-333, 42 S.Ct. 124, 66 L.Ed. 254 (1921).
 
 
 19
 We have already held that there is no violation of due process of law in these cases. We have found that the lineup procedure is both reasonable and consistent with the rules of fundamental fairness. Such reasonable methods employed by police for the solution of crime must not be lightly outlawed. As the Supreme Court said in Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963), in an analogous situation: '* * $ The States are not * * * precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' * * *.'The appellants tacitly concede that, if an arrest were first made for the offense under investigation, it would be proper to place them in a lineup for identification purposes. They also concede that it is constitutionally permissible to be viewed in their cells or in the prison yard. The only purpose of an arrest is to place a man in custody; here, the appellants are already in custody. Although they are in custody for the purpose of assuring their appearance at trial, it does not immunize them from being looked upon or overheard for the purpose of identification. In fact, the appellants' objections boil down to whether they may be compelled to present themselves for observation in a particular place. The district court found as a fact, however, that the sole reason for moving a suspect from his cell to another room for this purpose was made necessary 'because of the danger of harm to the viewers and the threat to the security of the institution.'[3] 239 F.Supp. at 499. This being so, we think that the method used here was proper and reasonable and does not infringe upon any constitutional right of the appellants.
 
 
 20
 Appellants rely heavily upon Butler v. Crumlish, 229 F.Supp. 565 (E.D.Pa., 1964), to support the conclusion that they are denied equal protection. There, our Brother Freedman, then sitting in the district court, in granting a preliminary injunction, held that the requirement that a prisoner, similarly situated to appellants, appear in a lineup 'goes beyond mere observation.' He further concluded that:
 
 
 21
 'The constitutional authority for the State to distinguish between criminal defendants by freeing those who supply bail pending trial and confining those who do not, furnishes no justification for any additional inequality of treatment beyond that which is inherent in the confinement itself.
 
 
 22
 'The compulsory 'line-up' of the unbailed defendant thus amounts to a material distinction between those who enter bail and those-- equally presumed to be innocent-- who do not.' Supra at 567.
 
 
 23
 We are compelled to respectfully disagree with the broad holding in that case. See Commonwealth v. Neal, 34 Pa.Dist. & Co.R.2d 365 (Phila., 1964).
 
 
 24
 Here we cannot find an invidious discrimination for the different methods employed by the police in securing the identification of a suspected criminal are made necessary because of the difference in circumstances in which those free on bail and those detained find themselves. Admittedly, there is a classification between those who can and those who cannot make bail. The Constitution, however, permits such a classification, and any differences here, arise solely because of the inherent characteristics of confinement and cannot constitute invidious discrimination.
 
 
 25
 The judgment of the district court will be affirmed.
 
 ON PETITION FOR REHEARING OF NO. 15358
 
 26
 Before KALODNER, Chief Judge, and BIGGS, McLAUGHLIN, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 
 
 27
 PER CURIAM.
 
 
 28
 The petition for rehearing in this case has been considered and presents no new arguments. A majority of the circuit judges in regular active service not having voted for rehearing en banc, the petition for rehearing will be denied.
 
 
 29
 FREEDMAN, Circuit Judge (dissenting).
 
 
 30
 The panel, now with the approval of the full court, appears to me to have erred on an important constitutional question which it has unnecessarily reached out to decide.
 
 
 31
 The panel has dealt in one opinion with a number of appeals which were argued together. It selected the facts in one of the appeals, that involving Roosevelt Morris (Mo. 15359), which it described as a 'typical' case, and stated that the essential facts were substantially the same in all the appeals, including that of Rigney, who alone has filed a petition for rehearing.
 
 
 32
 The facts are that the police were about to subject the accused, over his protest, to a police line-up while he was in the custody of the prison authorities because of his financial inability to post bail pending his trial. The involuntary line-up was intended to afford an opportunity to the victim of another crime to view, inspect and listen to the accused. Although the parties never specifically raised the question, it is clear in the Morris case that at the time of the lineup where he was to be viewed by the victim of another crime, there was probable cause for his arrest for that offense. Since the appellants conceded that a police line-up would be permissible if they had been arrested on the new charges their contention amounted to no more than an insistence on the formality of a new arrest to obtain custody over a defendant who had already been arrested on an earlier offense and was then in confinement because of his inability to furnish bail. If the panel had limited its opinion to this question it would have reached all that was necessary to the decision of the equal protection issue which had been presented to it. And it would have observed the rule that constitutional questions should not be decided in a case which can be determined without reaching them. Brandeis, J., concurring in Ashwander v. T.V.A., 297 U.S. 288, 289, 346-347, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955); Picking v. Pennsylvania Railroad Co., 151 F.2d 240 (3 Cir. 1945), cert. denied, 332 U.S. 776, 68 S.Ct. 38, 92 L.Ed. 361 (1947).
 
 
 33
 Because the opinion nevertheless undertakes to disapprove Butler v. Crumlish, 229 F.Supp. 565 (E.D.Pa.1964), 237 F.Supp. 58 (E.D.Pa.1964), which I decided in the District Court, and offers no conclusion on whether in Rigney's case the facts justify a finding of probable cause for his re-arrest, I feel bound to express my views on the claim of denial of the equal protection guarantee of the Fourteenth Amendment.
 
 
 34
 I speak necessarily at this point without the benefit of the argument of counsel on both sides in the present appeals. Conscious of this limitation, and subject to it, I believe that the views which were put forth in preliminary form in Butler v. Crumlish are sound. Within its general framework it may well be that some narrower lines may be drawn. For example, the principle against discrimination between those imprisoned for want of bail and those who are free on bail may be recognized and yet made innocuous as to a line-up held in the customary interval between an arrest and the fixing of bail. Judge Kraft made this distinction in United States v. Evans, 239 F.Supp. 554 (E.D.Pa.1965).
 
 
 35
 The distinction at issue in Butler v. Crumlish was made in that class of cases in which a defendant's bail had been fixed and the police sought to subject him to a line-up regarding a second, suspected offense, for which they had no probable cause for his arrest. The police have not asserted a right to re-arrest without probable cause a bailed defendant and force him into a line-up, and yet they seek to impose a line-up upon a defendant who is in exactly the same status but is imprisoned for want of bail. The discrimination therefore exists between those who, on the one hand, are imprisoned for want of bail, and those who, on the other hand, are free on bail. This was the case in Butler v. Crumlish, and Rigney's petition for rehearing claims it is the fact in his case. In Butler v. Crumlish I concluded that while such distinctions as are necessitated by confinement while awaiting trial may be made between those who supply bail and those who cannot, the unequal subjection to line-ups is in no way related to such confinement and therefore constitutes an invidious discrimination-- a classification having no basis except the impermissible one of financial means. 'In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color.' Black, J., in Griffin v. People of State of Illinois, 351 U.S. 12, 17, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). It followed that those for whom the doors of the jail were open but through which they could not pass because they could not tender the required bail, were entitled to the same immunity from compulsory line-up by the police as were the defendants who had been able to supply bail. 'When a bailed defendant is suspected of another crime the police invite him to come to the police station. If he appears, a much more informal 'line-up', the so-called 'divisional line-up', is held. If he refuses to appear, the police can do nothing beyond intensifying their efforts to obtain sufficient evidence to constitute probable cause for his arrest on the new charge. True the police assert that most such defendants voluntarily appear when asked to do so, out of an eagerness to remove the suspicion of guilt of another offense. But the comparison between those who are free on bail and those in prison for want of bail means nothing unless it is applied to those in each class who refuse to cooperate. The man who is at liberty may say no to the police; the man in prison for want of bail cannot.' Butler v. Crumlish, 229 F.Supp. at 567.
 
 
 36
 I cannot rid myself of the conviction that the simple fact of confinement for want of bail does not authorize the police to deal with a presumptively innocent citizen as if he were a creature subject to their will. As I said in Butler v. Crumlish: 'The confinement of the unbailed defendant while awaiting trial is a necessary restraint on his liberty, but it confers no authority on the police to take him into their dominion to investigate other possible offenses. The police are not the managers of the prison, and the circumstance that a number of defendants are confined in one place adds nothing to their authority over them.' (229 F.Supp. at 567).
 
 
 37
 It is to me strange that at this late date in the developing recognition of the rights of accused but unconvicted and presumably innocent defendants, the Court is unable to equal the sensitive recognition expressed in a less refined era, almost half a century ago, by a respected Philadelphis judge: 'It seems to be forgotten that an accused is not a convict, and that it is only strong necessity that compels his detention before trial. It is a restraint of the liberty of his person which is unavoidable. It certainly should not be aggravated by the infliction of any unnecessary indignity.
 
 
 38
 'An accused, but unconvicted, prisoner is not to be bundled about the county at the beck and call of every policeman or prosecutor who may wish to see him. * * * His rights are not different because he is accused of a crime. He has not been convicted and he is presumed to be innocent.' Finletter, J., in Commonwealth v. Brines, 29 Pa.Dist. 1091 (1920), quoted in Butler v. Crumlish, 229 F.Supp. at 567.
 
 
 39
 The evil of such discrimination is made all the more invidious by the outmoded system of bail. Originating in a stable society and calling for the pledged security of a freeholder, his family or friends, it is now in great urban areas of highly mobile populations largely in the hands of professional bondsmen who necessarily condition the writing of bonds on the receipt of premiums. Those who are without means to pay insurance premiums thus are forced to remain in jail for want of bail. The oppressive results on the poor and the vagrant may not be brushed aside by insistent claims of police necessity. Defendants who are in confinement solely because of lack of funds may no more be conscripted into a police lineup in the investigation of other offenses for which there is as yet not even preliminary proof of their guilt, than a prosperous defendant who is free on bail may be forced to enter a prison to join them in being viewed in a line-up. The equal protection provision of the Fourteenth Amendment spreads its benevolent protection on rich and poor alike, bailed or unbailed and equally presumed to be innocent until proven guilty beyond a reasonable doubt.
 
 
 40
 I have, of course, not had the benefit of argument in the present cases. For this reason and because of the unusual significance of the questions involved and the obvious existence of differences of opinion regarding them, my ultimate conclusion at this time is only that the cases should be reheard before the full court. On such a rehearing there would be room for consideration of the scope of the equal protection clause as it might apply even in cases where probable cause for arrest exists and the distinction is sought to be made between the imposition of involuntary line-up on defendants in such cases only and not on the others of the general population. The opportunity would also be afforded to examine the due process of law contention that all line-ups are unconstitutional in any event because they coerce the defendant into an involuntary participation in his criminal prosecution. All these difficult and significant problems, in my view, require rehearing before the court en banc, and since a majority now vote to deny the petition for rehearing, I respectfully dissent.
 
 
 41
 BIGGS, Circuit Judge (dissenting).
 
 
 42
 Judge Freedman's dissenting opinion demonstrates the seriousness and substantiality of the issues involved in the appeal at bar. These issues are of such gravity that in my judgment they merit rehearing before the court en banc. For this reason I must respectfully dissent from the order denying rehearing.
 
 
 43
 HASTIE, Circuit Judge, authorizes me to state that he joins in this dissent.
 
 
 
 [1]
 This court requested that the parties involved in this appeal submit memoranda concerning the distinction between 'formal' and 'informal' police lineups. The memoranda reveal that the parties disagree in their analysis of the distinctions involved. However, this appeal concerns only the 'formal' or 'post-commitment' lineup which the Philadelphia police use only after the suspect has been indicted and committed to custody at the Deterntion Center to be held over for trial. Since it is not importatnt to the disposition of this case, we need not discuss further the distinctions between the 'formal' and the 'informal' lineups
 
 
 [2]
 The prisoner is removed from his cell in the Detention Center and taken to the lineup room which is within the same building complex. The procedure employed, as found by the district court, is as follows:
 'The lineup room is divided into two parts by a glass partition. Inmates remain in the custody and control of the institution's guards on one side of the glass partition, while police and victims of crimes under investigation are on the other side. On the inmates' side is a platform on which they are made to stand and, upon order, to present front, side and rear views of themselves to the viewers. Lights are trained on the platform to make those on view visible to the viewers and the viewers less visible to them. There is a system of communication between the two sections by which requests are transmitted by the police to the guards and by which the voices of the inmate-suspects, responding to questions of name and age, are heard by the viewers.' Morris v. Crumlish, 239 F.Supp. at 498-499 (E.D.Pa., 1965).
 
 
 [3]
 See Gurczynski v. Yeager, 339 F.2d 884, 885 (C.A. 3, 1964), where we held that discipline reasonably maintained in state prisons is not under the supervisory direction of the federal courts