Commonwealth ex rel. Brown, Appellant, *v.* Myers.

Submitted November 11, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Elizabeth Langford Green* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Michael M. Baylson* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 15, 1969:

A jury found appellant, James Brown, guilty of first degree murder on May 2, 1958 and fixed the penalty at life imprisonment. No direct appeal was taken. Appellant filed a habeas corpus petition in 1965, alleging that two confessions which had been used against him at his trial were coerced. A *Jackson v. Denno,* 378 U.S. 368, hearing was held by the lower Court in

1967, *and that Court found that the confessions were voluntary.* This appeal followed.

James Harkins, the victim, who managed an Acme Store at 13th and Ellsworth Streets, Philadelphia, was robbed and killed on September 26, 1956. Appellant was questioned by the police on April 27, 1957, after they had received information from Ivard Maples that he saw appellant and several other boys enter the Acme Store at the approximate time of the slaying. Following appellant's arrest on April 27, 1957, at which time appellant was sixteen years of age, a written confession was obtained from him by the police. On April 29, 1957, appellant gave the police a second confession, which he signed. Both confessions were admitted into evidence and used against the appellant at his trial.

Appellant claims that the two confessions were involuntary and were obtained from him by the use of "psychological coercion." He alleges that the "psychological coercion" took the form of asking the same questions repeatedly until appellant gave answers acceptable to the police. At the *Jackson v. Denno* hearing, appellant testified that the reason he admitted being present at the scene of the murder was "because, through the interrogation, I became weak, so to speak, and I was scared also, and I thought maybe if I admitted it and said I was there, that would be the end of it and they would leave me alone. . . . They mentioned the electric chair, I could get the electric chair, but if I cooperated with them, they would see that I didn't." Appellant testified at this hearing that when he was first questioned at the Youth Study Center (he was there on an unrelated charge), he asked permission to call his father; that the supervisor of the Center suggested that he make the call, but that the detectives refused to allow him to do so and said that they would "contact" his father. When taken from the

Youth Study Center, appellant testified he was told to look inside the 33rd District Police Station. A few minutes later, Detective Tanksley appeared and told appellant that he had "been identified." Appellant claims he was punched in the jaw after he asked the officer the name of the person identifying him. Appellant was then taken to the 16th District Police Station and thereafter, while appellant was lying on the rear seat of the police car, Ivard Maples entered the car and identified the appellant. At about 3:00 P.M. on the same afternoon of April 27, 1957, appellant orally admitted his participation in the murder. Appellant further testified that during the evening of April 27, he was questioned continuously until he confessed. He also testified that the police "suggested" answers to him when his answers seemed to conflict with statements obtained from the other boys involved in the murder.

All of the police officers who testified at the 1967 *Jackson v. Denno* hearing contradicted appellant on all the important matters which he relied on for relief. Detectives Tanksley and Gilton testified that appellant was taken from the Youth Study Center to the 33rd District Police Station in order to obtain certain information concerning the murder and then to the 16th District Police Station, and finally to Room 117, City Hall. Both detectives denied, inter alia, the use of physical force or threats, or any mention of the electric chair, or any constant questioning of appellant. Detective Tanksley testified that appellant, at 3:30 P.M. on April 27, admitted participating in the murder. He further stated that appellant was not questioned further until about 10:30 P.M., when Detective Gilton arrived at City Hall, and that the written statement was obtained after about fifty minutes of questioning. Detective Gilton testified that appellant was

fed before the interrogation began, that he was warned that anything he said could be used for or against him, and that after the statement was typed, appellant read and signed it. Detective Gilton further stated that appellant told him on April 29, 1957, that he wished to make an additional statement, which was obtained from 7:40 P.M. to 8:30 P.M. on April 29.

The lower Court did not believe the appellant.

Our review of the record in this case fully supports the decision of the lower Court. Appellant does not claim, nor could he, that his two confessions are invalid because he was not initially warned in accordance with the present standards of *Miranda v. Arizona,* 384 U.S. 436 (1966), or *Escobedo v. Illinois,* 378 U.S. 478 (1964), since these requirements are inapplicable to a 1957 confession and a 1958 trial. See, *Johnson v. New Jersey,* 384 U.S. 719 (1966), and *Commonwealth v. Snyder,* 427 Pa. 83, 233 A. 2d 530 (1967).

Nor are the confessions invalid because of the so-called constant and repetitive questioning of appellant. In *Com. ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968), the Court reviewed the many factors and circumstances which must be considered in determining whether a confession was voluntary—including the age, the mentality, and the length of the examination and interrogation of the suspect—and analyzed many prior decisions of the Supreme Court of the United States and of this Court. This Court reversed the admission of the confession, and said (pages 149-150): "Our task on review, like that of the United States Supreme Court, is to consider only 'the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted': Culumbe v. Connecticut, 367 U.S., supra, at 604."

To briefly summarize, it is clear that appellant was not subjected to the type of coercion necessary to in-

validate a written confession. The police officers testified that appellant was not subjected to prolonged questioning either on April 27 or on April 29. Accurate time sheets were kept, recording everything that occurred when appellant was in custody at City Hall, before, during and after the interrogation. When appellant saw his father on April 29, he told him that he was being treated fine and had no complaints.

In *Com. ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434, the Court said (page 160) : "Appellant was questioned for a total of some five hours in the approximately ten hours between the time he was taken into custody and the giving of his statement. . . . The law is clear that intermittent questioning over such a short period as ten hours does not vitiate a confession. Commonwealth v. Graham, 408 Pa. 155, 182 A. 2d 727 (1962)."

We find no abuse of discretion and no merit in any of appellant's contentions.

Order affirmed.