**UNITED STATES of America ex rel.
James BROWN**

**v.**

**A. T. RUNDLE, Superintendent.**

**Misc. No. 69–572.**

United States District Court,
E. D. Pennsylvania.

April 28, 1970.

## OPINION

LUONGO, District Judge.

This is a petition for writ of habeas corpus [1] in which relator, James Brown, is attacking his 1958 state conviction for first degree murder.

In the afternoon of September 26, 1956, one James M. Harkins was brutally beaten to death in an Acme store in Philadelphia. At first the police were completely stymied in their attempts to solve the crime. In April, 1957, however, one Ivard Maples informed the police that James Brown was one of the persons [2] involved in the Harkins murder. At the time of Maple's disclosure, relator was confined at the Youth Study Center in Philadelphia on an unrelated charge of carrying a concealed weapon. On April 27, 1957, the authorities at the Youth Study Center turned Brown over to police officers of the Juvenile Aid Division of the Philadelphia Police Department for questioning in connection with the Harkins murder. Soon after Maples identified Brown at the police station, relator orally admitted his participation in the crime. Thereafter, while in police custody, Brown signed two confessions which were admitted in

---

1. This petition was filed on November 10, 1969. An order was entered directing the Clerk of Quarter Sessions and the Prothonotary of the Common Pleas Courts to transmit the state records. There was considerable delay in the transmittal of the records. The criminal records are before the Pennsylvania Supreme Court which is considering an appeal by one of relator's co-defendants. For a while, relator's state habeas corpus files were also before the State Supreme Court. The latter records have now been forwarded to me. They contain a copy of the transcript of the criminal trial and the record is adequate for a disposition of the issues raised in the proceedings in this court.

2. The co-defendants of relator who were tried separately were John Joiner, Eugene Lloyd and Walter Goldsmith.

evidence at his trial which took place in April, 1958. He was found guilty of first degree murder and was sentenced to life imprisonment. No appeal was taken.

On April 25, 1965, Brown filed a petition for writ of habeas corpus in the state court. On May 10, 11, and September 28, 1967 a Jackson v. Denno [3] hearing was held before Judge Francis Shunk Brown, who had presided at relator's trial. On October 30, 1967, Judge Brown denied the petition, finding that relator's confession was voluntary. In an exhaustive opinion, the Supreme Court of Pennsylvania affirmed. Commonwealth ex rel. Brown v. Myers, 433 Pa. 25, 249 A.2d 337 (1969).

In the instant petition for writ of habeas corpus Brown again contends that his confessions were involuntary in that they were the product of physical and psychological pressures by the police and were obtained without his having been given Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] and Escobedo [v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] warnings. Brown also charges that his transfer from the Youth Study Center was an illegal seizure of his person in violation of the Fourth and Fourteenth Amendments, and that his confessions were the fruit of the illegal seizure and should have been excluded.[4]

1. *Voluntariness of Confessions.*

■ The state records reveal that relator was granted a full and fair hearing in the state court on the question of the voluntariness of his confessions. There is no need for an evidentiary hearing in this court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

At relator's Jackson v. Denno hearing, he testified as follows: He was taken from the "familiar surroundings" of the Youth Study Center without being permitted to communicate with his parents; he was punched by a police officer; he was tricked into thinking that he had been identified by an eyewitness; he was held incommunicado; and he was psychologically pressured by the police officers' constant and repetitive questioning and by their threats of the electric chair.

The testimony of the police officers, the records of the Philadelphia Police Department and Brown's statements at his jury trial refute this testimony. Detectives Tanksley and Gilton testified that relator was taken from the Youth Study Center to the 33rd District Police Station, and then to the 16th District Police Station for identification by Maples, and finally to Room 117, City Hall.[5] The police officers denied the use of physical force or threats, or constant questioning, or mention of the electric chair. Furthermore, the record of Brown's trial contains his admission that none of the police officers had used physical force on him. The testimony of the police officers and the police records of interrogation indicate that relator was questioned for a maximum of 50–60 minutes at a time, and most of that time was spent in typing or writing down questions and answers. Relator conceded that he was well fed and not otherwise physically incapacitated. On the other hand, the police officers at no time told relator that he had the right to remain silent and to be represented by counsel.

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. Although it does not appear that this issue was presented to the state court, I will nevertheless dispose of it on the merits. United States ex rel. Drew v. Myers, 327 F.2d 174 (3d Cir.), cert. denied, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52 (1964).

5. Relator argues that the movement through two police stations to City Hall evidences efforts to hold him incommunicado. Although it is unclear why Brown was not taken directly from the Youth Study Center to City Hall, it does appear to have been due to uncertainty on the part of the Juvenile Aid police officers as to what to do with Brown, a person to be charged with murder, or for that matter, Ivard Maples, the witness.

The police officers denied holding Brown incommunicado and testified that he did not make a request to see anyone. Brown's first statement was obtained on the evening of April 27, 1957, a few hours after he had been transferred from the Youth Study Center. Most of the intervening time was spent in moving him to his ultimate destination (see footnote 5). Brown's second statement was given on the evening of April 29, after he had spoken with his father.

It is apparent that Judge Brown believed the testimony of the police officers and did not accept relator's testimony as credible. There is ample support in the record for the state court's finding.

■ To be admissible, a confession must be the product of a rational intellect and free will. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); United States ex rel. Smith v. Brierly, 267 F.Supp. 274 (E.D.Pa.), aff'd 384 F.2d 992 (3d Cir. 1967).

■■ Since neither Miranda v. Arizona, *supra,* nor Escobedo v. Illinois, *supra,* are retroactive [Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)], the failure of the police officers to warn relator of his constitutional rights is only one factor in determining the voluntariness of a confession. Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). If the totality of the circumstances indicate that the confession was voluntary, it is admissible. Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1967); United States ex rel. Kern v. Maroney, 275 F.Supp. 435 (W.D. Pa.1967). The circumstances surrounding the obtaining of the confessions must be examined to determine the cumulative impact on relator's mind. See Moser v. United States, 381 F.2d 363 (9th Cir.), cert. denied, 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 850 (1967); United States ex rel. Heath v. Rundle, 298 F.Supp. 1207 (E.D.Pa.1969).

■ I am satisfied from the review of the state record that Brown's confessions were the product of a rational intellect and free will. He had had confrontations with the law before, and hence, was not unfamiliar with police interrogation procedures. There was no constant or prolonged questioning; no use of physical or psychological force; no trickery or cajolery. There was no evidence, except for relator's own testimony which Judge Brown apparently did not believe, that relator was held incommunicado. Such an assertion, furthermore, is refuted by the short period of questioning involved before relator's first written statement [*cf.* United States ex rel. Johnson v. Rundle, 286 F.Supp. 765 (E.D.Pa.1968)] and by his father's visit prior to his second confession. Under such circumstances, I agree that the confessions were voluntary. See United States v. Moriarty, 375 F.2d 901 (7th Cir.), cert. denied, 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967); United States ex rel. Johnson v. Rundle, *supra;* United States ex rel. Kern v. Maroney, *supra.*

### 2. *Arrest and Seizure.*

■ Brown contends that he was illegally seized by police officers when he was transferred from the Youth Study Center. In effect, he argues that the transfer constituted an illegal arrest and the confessions were the fruit of that unlawful conduct. The argument is without merit. The "sole physical attribute of an arrest is the taking into custody." Rigney v. Hendrick, 355 F.2d 710, 713 (3d Cir. 1965), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966). In the instant case relator was already in proper custody of state officials. It would be anomalous to require the re-arrest of a person already in custody. Rigney v. Hendrick, *supra;* Hayes v. United States, 367 F.2d 216 (10th Cir. 1966).

Since the state record reveals that none of the claims presented by relator's petition are meritorious, the writ will be denied, without hearing.