**UNITED STATES of America ex rel. James BROWN, E–8301, Appellant,**

v.

**A. T. RUNDLE, Superintendent.**

**No. 18988.**

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1971.

Decided Nov. 10, 1971.

---

6. The habeas petition also did not allege that the sentence was excessive.

Christopher K. Walters, Morgan, Lewis, & Bockius, Philadelphia, Pa., for appellant.

Milton M. Stein, Asst. Dist. Atty., Philadelphia, Pa., (James D. Crawford, Deputy Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.

## OPINION OF THE COURT

GANEY, Circuit Judge.

On September 26, 1956, James Harkins, an Acme Supermarket manager, was suddenly seized, robbed and brutally beaten to death by four young men who entered the store, one of whom was the appellant, a member of a gang called the Barbarians. Some seven months later, one Ivard Maples, a member of a rival gang, informed the police that the appellant, James Brown, was one of those involved in the murder of Harkins.

At the time of Maples advising the police, the appellant was confined at the Youth Study Center in Philadelphia, on a charge of carrying a concealed deadly weapon, which charge was not related to the killing. On April 27, 1957, the authorities at the Youth Study Center turned the appellant over to the police officers of the Juvenile Aid Division of the Philadelphia Police Department, for questioning in connection with the murder of Harkins. This was done at the request of one Luther Tanksley, who was a detective with the Juvenile Aid Bureau. After appellant was released on permission from the Youth Study Center, he was taken to the 16th District Police Station in Philadelphia, where he was told he had been identified by Maples as one of those who had gone inside the Acme store at 13th and Ellsworth Streets, the place where Harkins was murdered. He was then taken to the 33rd District Police Station where he was confronted with Maples, who had been brought there with the permission of his mother. The interview and interrogation regarding Maples and the appellant occurred at the 33rd District Station where Maples identified Brown as one of the boys whom he saw running into the store and then both Maples and Brown were transferred to the Homicide Unit at 117 City Hall, Philadelphia, where Detective Gilton interviewed the appellant and released Maples. He was there warned that anything he said might be used against him. Tanksley, Sergeant Troy and Officer Cuthbertson were present when the appellant admitted to his being present at the Acme store. At first the appellant denied the accusation of Maples, but later admitted he was with three other boys, Floyd, Joyner and Goldsmith, and stated that he pushed Harkins inside the store, beat and robbed him. This first interview with the appellant was for some forty or fifty minutes.

A second interrogation took place from 7:40 to 8:30 on April 29, 1957, by Detective Gilton. The second interrogation took place as the result of Brown's advising a judge that he wished to implement or make an additional statement. Before this interview Brown had a five-minute talk with his father, to whom he stated that he was treated fairly by the police. However, at the later *Jackson-Denno* hearing, he said that he had been punched in the jaw by Tanksley.

The appellant signed both confessions, in the second of which he admitted that he had punched the victim, Harkins, five or seven times around the face and neck and through the body with heavy brass knuckles which he had put on when he went into the store, and the others accompanying him did likewise. As he was about to leave the scene of the killing, he was given some $52 by one of the others and immediately went to his home where he was later arrested.

The appellant was convicted by a jury of first degree murder and the penalty fixed at life imprisonment from which no appeal was ever taken, although he was represented by two experienced members of the Philadelphia Bar.

Accurate time sheets were made while the appellant was in custody at City Hall from April 27th, until his removal to the Youth Study Center on April 29th, which were made part of the record and reflected nothing that could be considered involuntary on the part of the appellant. The confessions were read to the jury without any objection by appellant's experienced counsel and the record shows that one of his counsel, Mr. Louis F. McCabe, advised appellant that it was his judgment that the confessions should be read to the jury and that they would not go out to the jury unless the appellant consented, although McCabe believed that both statements should go to the jury. When asked if appellant agreed, he answered, "I agree with you."

On April 25, 1965, he filed a petition for writ of habeas corpus in the state court alleging that his statements were coerced and involuntary and requested a new trial. The matter was referred to the Honorable Francis Shunk Brown who held a *Jackson-Denno* hearing on September 21, 1967, in which every phase of his arrest, detention and confessions were gone into in detail, the testimony covering some 570 pages. Judge Brown found that the confessions were voluntarily given and were properly admitted into evidence at trial. The

Pennsylvania Supreme Court, in a lengthy opinion, affirmed the conviction. Commonwealth ex rel. Brown v. Myers, 433 Pa. 25, 249 A.2d 337.

On October 24, 1969, appellant filed the present petition for writ of habeas corpus. In this petition he alleged both the involuntariness of his confession and, as an additional ground which was not raised in the state court, that his removal from the Youth Study Center was a denial of his Constitutional rights. The writ was denied, United States ex rel. Brown v. Rundle, D.C., 311 F.Supp. 1095, and this appeal followed.

■ A careful scrutiny and detailed examination of the lengthy record in this case reveals that both confessions were indeed voluntary on the part of the appellant and were properly admissible at his trial. The hearing judge was careful to go into every detail of the arrest and the circumstances surrounding the taking of the confessions and in no instance was there found any coercion, pressuring of the appellant or evidence of violence used by the police in the taking thereof.

■ While there was no hearing held by the district court, it reviewed the testimony of the state court in detail, and there was, accordingly, no necessity for a new hearing, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770. Since this case was pre-Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court has made it clear that a confession is not necessarily involuntary merely because it results from police interrogation and the pressures inherent to this process. Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L. Ed.2d 1523; Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. A confession cannot be held invalid merely because the accused was sixteen

520

years of age, since each case must be considered on its merits and an analysis of the evidence supports the district court's conclusion in that the appellant's own testimony was contradicted by himself, as well as by the Commonwealth's witnesses.

The appellant had approximately fourteen prior arrests or other contacts with the police and while he was in custody several hours, it must not have been an unusual occurrence for him or could it be thought to be *ipso facto* coercive.

There is nothing in the record that shows Brown made any request to see anyone. The confessions here were not obtained by any lengthy incommunicado interrogation; within the first meeting he was interrogated, appellant admitted his participation in the crime. The statements here made were measured by adult procedural standards and there was no Constitutional impediment to the admissibility of such statements into evidence in a subsequent criminal trial, since he was given all the rights guaranteed or applicable to adults at the time.

The appellant argues that his transfer and removal from the Youth Study Center constituted an illegal arrest. As was held in Rigney v. Hendrick, 3 Cir., 355 F.2d 710, 713, "The contention made by the appellants that there first must be an arrest before they are taken from their cells to be placed in a lineup has no merit, for the sole physical attribute of an arrest is the taking into custody. Here, it would be anomalous to require an arrest, for the appellants are already in custody. Compare Barrett v. United States, 270 F.2d 772, 775–776 (C.A.8, 1959); United States ex rel. Bogish v. Tees, 211 F.2d 69, 72 (C.A.3, 1954)." See also United States ex rel. Dickerson v. Rundle, 3 Cir. 430 F.2d 462 (1970). This rule is applicable here in that the appellant was presently in custody by reason of his commission of another offense and there was no necessity for re-arresting him.

The judgment of the lower court will be affirmed.