**Derrick L. WALKER,**

v.

**Thomas J. SPILLER.**

No. Civ.A. 95–6921.

United States District Court,
E.D. Pennsylvania.

May 24, 1999.

Michael D. Homans, Mary Catherine Roper, Drinker Biddle & Renth, Philadelphia, PA, for plaintiff.

Janet F. Ginzberg, City of Philadelphia, Philadelphia, PA, for defendant.

### *MEMORANDUM*

ANITA B. BRODY, District Judge.

Before me is a motion for summary judgment by defendant Detective Thomas

J. Spiller. Having accepted plaintiff's version of the contested facts as true, and drawing all reasonable inferences in his favor, I will grant defendant's motion. I conclude that, as a matter of law, Detective Spiller had probable cause to arrest Walker and was not required to investigate Walker's alibi when he allegedly became aware of it. I will grant judgment in favor of defendant on all claims, with the single exception of plaintiff's claim that Spiller used excessive force against him.[1]

## BACKGROUND

The following recitation of the facts is stated in a light most favorable to the plaintiff. On the morning of March 22, 1994, approximately one month after his release on parole from S.C.I. Greensburg, plaintiff Derrick Walker, along with an accomplice named Reginald Curry, robbed Gabriella and Michael Rimm ("Rimms") by forcing them into their garage at gunpoint. The robbery took place in the Queen Village section of Philadelphia. Walker and Curry, who are both African–American males, were apprehended by the police and identified by the Rimms that same morning. Detective Spiller was involved in the investigation of this robbery, and he questioned both Walker and Curry. Walker alleges that Spiller attempted to coerce Walker into confessing to the Rimms robbery, and that Spiller directed racial slurs at him. Following Walker's arrest in the Rimms robbery, he was kept in pre-trial detention in Holmesburg County Prison ("Holmesburg"), because he could not make bail.[2]

Meanwhile, two other Philadelphia police officers, John Hewitt and Brian Peters, had compiled a list of eleven recent unsolved robberies in Queen Village in which the assailants were identified as African–American males. When Hewitt and Peters learned of the Rimms robbery and that two suspects had been arrested, they forwarded their list to Detective Spiller. Detective Spiller then prepared two photo arrays. Each array consisted of eight, black-and-white photographs of African–American men, all of similar age and with similar facial hair. Walker's photo was included in one array, and Curry's was included in the other. Spiller showed these arrays to victims included on the list of unsolved robberies provided to Spiller by Hewitt and Peters. Two of these victims, Youssef Awad, who was robbed on February 19, 1994, and Bill Winkler, who was robbed on December 24, 1993, identified Walker as an assailant. On April 12, 1994, Spiller filed an affidavit of probable cause for the arrest of Walker for the Awad robbery, and a warrant was issued that same day.[3] Spiller did not get a warrant for Walker's arrest for the Winkler robbery.

On April 25, 1994, Spiller went to Holmesburg and, as characterized by Walker, "arrested" Walker for the robberies of Awad and Winkler.[4] Spiller placed

1. In his motion, defendant argued that plaintiff had failed to produce any evidence of injury to support his claim of excessive force. However, at oral argument on this motion, counsel stated that Spiller's motion was one for partial summary judgment, and that plaintiff's claim for excessive force would have to go to a jury.

2. Plaintiff was subsequently convicted by a jury in the robbery of the Rimms, and was sentenced to a term of imprisonment from 9 to 18 years.

3. To my knowledge, Walker has not challenged the validity of the warrant for his arrest for the Awad robbery.

4. I will refer to Spiller's taking of Walker from Holmesburg to the South Detective Division as an "arrest" because the parties have done so in their papers. However, once plaintiff was in custody for the Rimms robbery, it is questionable whether his being taken to the South Detective Division constituted an arrest. In *United States ex rel Brown v. Rundle,* 450 F.2d 517, 520 (3d Cir.1971), the appellant had been in custody at the Youth Study Center on a charge of carrying a concealed deadly weapon. When the police received information implicating plaintiff in an unrelated murder, he was transported from the Youth Study Center to the district police station to participate in a lineup in the murder investigation. Appellant claimed that the

Walker in very tight handcuffs, which bruised Walker's wrists, and brought him to the South Detective Division. Spiller directed racial slurs at Walker, and threatened to "clean up the books" with Walker if he did not confess to the Winkler robbery. Walker understood the phrase "clean up the books" to mean that Spiller would close unsolved cases by charging Walker with those crimes. At the South Detective Division, Walker learned that the Winkler robbery had occurred on December 24, 1993. He informed Spiller that he could not have committed the crime, because he was incarcerated at S.C.I. Greensburg, near Pittsburgh, on that day. Spiller did not check Walker's alibi. Instead, Walker was taken for a bond hearing on the Winkler robbery and then returned to Holmesburg. On May 13, 1994, he was taken from Holmesburg to Philadelphia Municipal Court for a preliminary arraignment on the Winkler robbery, and was ordered to appear at a lineup on June 16, 1994. Walker was taken from Holmesburg to the Philadelphia Detention Center to participate in the line up. Winkler failed to identify Walker as his assailant in this lineup and Walker was returned to Holmesburg. Approximately one week later, charges against Walker for the Winkler robbery were dropped. Based on these facts, Walker has sued, under 42 U.S.C. § 1983, claiming false arrest, deprivation of liberty without due process, excessive force, and false imprisonment under the laws of the Commonwealth of Pennsylvania and the United States Constitution. Spiller claims in his defense that he had probable cause to arrest Walker and is entitled to qualified immunity on Walker's claims.

## DISCUSSION

In order to bring a successful § 1983 claim, a plaintiff must demonstrate: (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir.1994); *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir. 1993). It is not disputed that Spiller was acting under color of state law in this matter, therefore I only analyze whether Walker had established that he has been deprived of a federal right, privilege, or immunity.

### Probable Cause to Arrest

Probable cause to arrest [5] exists if " 'at the moment the arrest was made

---

transfer constituted an illegal arrest. The Third Circuit rejected that argument, and quoted from its earlier opinion in *Rigney v. Hendrick*, 355 F.2d 710, 713 (3d Cir.1965), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966), in which the court stated:

"The contention ... that there first must be an arrest before they are taken from their cells to be placed in a lineup has no merit, for the sole physical attribute of an arrest is the taking into physical custody. Here, it would be anomalous to require an arrest, for the appellants are already in custody.... [T]he appellant was presently in custody by reason of his commission of another offense and there was no necessity for re-arresting him."

*Rundle*, 450 F.2d at 520; *See also Hayes v. United States*, 367 F.2d 216, 221 (10th Cir. 1966) ("An arrest presumes taking the prisoner into custody and there could be no arrest of a prisoner who is already in custody.");

*Morris v. Crumlish*, 239 F.Supp. 498, 502 (E.D.Pa.1965).

5. Analogizing to the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Plaintiff argues that even if he was not arrested, he was unreasonably "seized" by Spiller without probable cause. For the purpose of ruling on Spiller's motion for summary judgment, I assume, without deciding, that Spiller "seized" Walker when he was taken from Holmesburg to the South Detective Division, and I analyze his claims under the Fourth Amendment. I also assume that Spiller needed probable cause for this "seizure." Although "not all seizures require probable cause," *Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3d Cir.1998), and "only those seizures that amount to a significant liberty deprivation must be proceeded by a probable cause determination," *id.* (discussing the Court's decision

... the facts and circumstances within [defendants'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [plaintiff] had violated [the law]." *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see also Sharrar v. Felsing,* 128 F.3d 810, 817–18 (3d Cir.1997). "A court must look to the 'totality of the circumstances' and use a 'common sense' approach to issues of probable cause." *Sharrar,* 128 F.3d at 818 (quoting *United States v. Glasser,* 750 F.2d 1197, 1205 (3d Cir.1984), *cert. denied sub nom. Erdlen v. United States,* 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985)). Where the facts underlying the probable cause determination are not in dispute, summary judgment is appropriate. *Id.*

■ When the defense of qualified immunity is raised, as it has been here, officers "who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." *Sharrar,* 128 F.3d at 826 (quoting *Hunter,* 502 U.S. at 227, 112 S.Ct. 534). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter,* 502 U.S. at 229, 112 S.Ct. 534 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The objective reasonableness of an arresting officer's belief that probable cause existed is a question for the court to decide. *See Hunter,* 502 U.S. at 227, 112 S.Ct. 534; *Sharrar,* 128 F.3d at 818.

■ Analyzed under the *Beck* standard the unchallenged facts and circumstances available to Spiller "at the moment" he arrested Walker in Holmesburg, established probable cause. First, Spiller was

in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)), from the start of this litigation, both parties have argued that

aware that Walker had recently been arrested for robbing the Rimms in Queen Village and that Walker was identified contemporaneously by the Rimms. Second, Spiller knew that Youssef Awad and Bill Winkler, both victims of recent robberies in Queen Village, had identified Walker as one of their assailants. Those identifications were made from standard, black-and-white, eight-photo arrays. "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Sharrar,* 128 F.3d at 818; *see also Greene v. City of Philadelphia,* 1998 WL 254062, at *7 (E.D.Pa.1998) (photo identification by victim established probable cause, even though there were considerable discrepancies between victim's initial description and suspect's actual appearance); *Stepp v. Mangold,* 1998 WL 309921, at *6 (E.D.Pa. 1998) (officer's belief that plaintiff committed bank robbery was not "unreasonable or unintelligent," when teller had identified plaintiff based on a photo array, even though other witnesses failed to identify plaintiff as culprit, and fingerprints on demand not did not match those of plaintiff). Walker has not offered any evidence which would undermine the credibility of Winkler's identification of Walker as his assailant. Finally, the facts surrounding the robberies of the Rimms, Awad, and Winkler were similar. All three were committed: (1) within the same three-month time frame; (2) in the same neighborhood; (3) by two assailants; (4) one of whom pointed a gun at the victim(s). Based on the victim's identification and the suspicion that it was part of a pattern of crimes in the neighborhood, Spiller filed for and obtained a warrant for Walker's arrest for the Awad robbery. I conclude, as did the official who issued the warrant in the Awad case, that Spiller had probable cause to arrest Walker for the Winkler robbery. Having found probable cause, I need not

the probable cause standard applies to Walker's case.

address whether Spiller's belief that probable cause existed was a reasonable mistake, entitling him to qualified immunity.

### Spiller's Failure to Investigate Walker's Alibi

■ Walker argues that, by failing to conduct a ten-minute check on whether plaintiff was incarcerated on December 24, 1994, Spiller ignored readily available information that would have exonerated Walker for the Winkler robbery. He claims that Spiller's failure to check Walker's alibi vitiated his initial probable cause to arrest Walker and thereby rendered an otherwise lawful arrest unlawful. Walker's argument is not supported by established law. A police officer's failure to investigate a suspect's alibi does not "negate the probable cause for the warrantless arrest in the absence of a showing that the [officer's] initial probable cause determination was itself unreasonable." *Romero v. Fay*, 45 F.3d 1472, 1477–78 (10th Cir.1995); *accord DiNicola v. DiPaolo*, 25 F.Supp.2d 630, 657–58 (W.D.Pa. 1998). The cases Walker cites to support his argument are all materially different from this case.[6] First, in those cases, the arresting officers failed to investigate fundamental evidence at the crime scene which was easily available to them.[7] Walker does not allege that Spiller ignored exculpatory information that was easily available prior to the arrest. Walker states that he did not inform Spiller of his alibi until after Spiller had obtained a warrant in the Awad robbery, and after Spiller transported Walker from Holmesburg to the South Detective Division—that is, after

Spiller had initially established probable cause and had, in fact, "arrested" Walker. As explained above, there is no indication that Spiller's initial probable cause determination was unreasonable, or that Spiller conducted an unreasonable initial investigation.

Second, in none of the cases cited by plaintiff was the arrested individual already in custodial detention. Even if Spiller had immediately checked Walker's alibi, and cleared him of the Winkler robbery, Walker would not have been released from custody; he would have been returned to Holmesburg to await trial for the Rimms robbery. Walker's liberty interest in having Spiller immediately investigate his alibi was minimal, if it existed at all. Because Walker was already in custody, once Spiller had sufficient probable cause to believe that Walker had committed the Winkler robbery, it was not unreasonable for him to rely on other procedural safeguards—the right to counsel, a preliminary arraignment and a preliminary hearing, under Pa.R.Crim.P. 140 and 141; dismissal, under Pa.R.Crim.P. 143; and the guarantee of a speedy trial—to protect Walker.

■ Even if I were to conclude that Spiller's failure to check Walker's alibi vitiated Spiller's initial probable cause to arrest Walker, Spiller would be entitled to judgment in his favor on the basis of qualified immunity. The "contours of the right," *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), claimed by Walker—that Spiller had a duty to check his alibi even after establishing probable cause—were not suf-

---

**6.** The main cases cited by Walker are *Baptiste v. J. C. Penney Co., Inc.*, 147 F.3d 1252 (10th Cir.1998); *Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir.1989); *BeVier v. Hucal*, 806 F.2d 123 (7th Cir.1986); and *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir.1988).

**7.** In *Clipper*, for example, the plaintiff was arrested for bank robbery. The arresting officer was found to have acted without probable cause when: (1) he failed to examine the bank surveillance film; (2) an officer on the scene

of the robbery indicated that he was not sure that Clipper was the man; (3) the arresting officer failed to interview individuals who Clipper said could verify his alibi. The court looked to the totality of the initial investigation and upheld a jury's determination that the officer lacked probable cause. The court stated, however, that the arresting officer's failure to investigate leads provided by the suspect, in itself, was not sufficient to negate probable cause. *Clipper*, 876 F.2d at 20.

ficiently clear so that a reasonable officer in Spiller's situation would have understood that failing to investigate Walker's alibi would violate the law. Plaintiff cites no cases which directly support his argument, and in *Romero*, a 1995 decision, the Tenth Circuit reviewed the caselaw and held that officers had no such duty. In summary, Detective Spiller had probable cause to arrest Walker for the Winkler robbery, and was not required to check Spiller's alibi. Thus, Walker has failed to establish a violation of a federal right, privilege, or immunity, with regard to his claims for false arrest, and Detective Spiller is entitled to judgment in his favor on those claims.

## State Law Claims

Walker also alleges state law claims for false arrest and false imprisonment against Detective Spiller.

> In the context of an arrest, an actor is liable for false imprisonment when he causes the false arrest of another person. A false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so in Pennsylvania.

*Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 295 n. 2 (1994) (Montemuro, J. dissenting) (citing Pennsylvania Suggested Standard Civil Jury Instructions § 13.04.). For the reasons expressed above, I conclude that Detective Spiller had probable cause to arrest Walker for the Winkler robbery. Because absence of probable cause is an element of false arrest, and in this context, false imprisonment as well, judgment in favor of Spiller is warranted on these claims.

## CONCLUSION

For the reasons expressed above, Walker's claims against all Detective Spiller, with the exception Walker's excessive force claim, are dismissed.